UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MICHAEL G. ROEHL, and all others,    )
similarly situated    )
   )
      Plaintiffs,    )    Case No. 11 C 7177
   )
v.    )    Magistrate Judge Sidney I. Schenkier
   )
CITY OF NAPERVILLE,    )
   )
      Defendant.    )

### MEMORANDUM OPINION AND ORDER[1]

Plaintiff Michael Roehl filed a one-count complaint under 42 U.S.C § 1983 against defendant City of Naperville ("Naperville"), alleging that Naperville Ordinance 10-8-1 ("the 2009 Ordinance") violates the Fourteenth Amendment right of plaintiff, and those of a putative class of similarly situated plaintiffs, to be free from deprivation of property without due process (doc. # 1: Compl., ¶ 32). Plaintiff seeks declaratory and injunctive relief as well as damages. Naperville has filed a motion to dismiss the complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6) (doc. # 26: Def.'s Mot. to Dismiss). For the reasons set forth below, we deny defendant's motion.

### I.

We begin with the allegations in the complaint, which we accept as true for purposes of the motion. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). To determine if plaintiff's allegations are sufficient to state a claim, we must determine if they both give the defendants notice of the claims to which they must respond and make the asserted claims "plausible on [their] face." *Ashcroft v. Iqbal*, – U.S. –, 129 S. Ct. 1937, 1949 (2009). "A claim has facial plausibility when the

---

[1]On October 26, 2011, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1(b), this case was assigned to this Court for all proceedings, including the entry of final judgment (docs. # 22).

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Barnett v. Webster*, 658 F.3d 742, 752 (7th Cir. 2011) (citing *Iqbal*, 129 S. Ct. at 1949).

The allegations of the complaint center on the 2009 Ordinance, which states in its entirety: "The Police Department will charge an administrative fee of fifty dollars ($50.00) for the processing of bail or bond of an individual in any legal process, civil or criminal, or on any bookable arrest, including any arrest on a warrant" (Compl.: Ex. A, Ord. 10-8-1). The 2009 Ordinance does not establish any procedures allowing a person to challenge imposition of the fee. Nor does the 2009 Ordinance provide that the fee may be reimbursed under certain circumstances, such as if the charges are dropped or the arrestee is later acquitted (Compl., ¶ 14). The 2009 Ordinance set forth no statements or findings by the City of Naperville as to its purpose in imposing the fee.

On February 13, 2011, Mr. Roehl was arrested and charged with driving under the influence of alcohol (Compl., ¶ 15). Mr. Roehl was taken to the Naperville jail, and upon booking, he was required to pay the $50.00 booking fee (*Id.*, ¶ 17). Plaintiff was found not guilty and released from jail, but the $50.00 was not returned to him (*Id.*, ¶¶ 18-20). Mr. Roehl alleges that many others have suffered this same deprivation: he asserts that Naperville collected $27,350.00 in "administrative booking fees" during the last three months of 2009, and $71,605.00 in booking fees during calendar year 2010 (*Id.*, ¶ 10). For the Fiscal Year 2010 (May 1, 2009 to April 30, 2010), the City of Naperville appropriated a total of $37,005,684.00 to the Naperville Police Department, of which

$5,952,921.00 was allocated to the "Services" division, which includes Patrol and Support Services.[2]

On December 6, 2011, Naperville passed Ordinance 11-172 ("the 2011 Ordinance"), which repealed and replaced the 2009 Ordinance (doc. # 27: Def.'s Mem. in Supp. Of Mot. To Dismiss at 12-14).[3] The 2011 Ordinance states that it became effective upon its passage on December 6, 2011 (Def.'s Mem.: Ex. A, Ord. 11-172, Sec. 3). Like the earlier ordinance, the 2011 Ordinance states that the Naperville police department will charge a fee of $50.00 for the processing of any bookable arrest (Def.'s Mem.: Ex. A, Ord. 11-172). However, the 2011 Ordinance addresses several matters omitted from the 2009 Ordinance.

*First*, the 2011 Ordinance states what happens if an arrestee cannot pay the administrative fee at the time of their arrest. In that circumstance, the 2011 Ordinance provides that arrestees will be billed for the $50.00. If the bill is not paid within 30 days, the fee is referred to billing for collection where the arrestees can contest the fee (Def.'s Mem.: Ex. A, Ord. 11-172).

*Second*, the 2011 Ordinance adds sections that provide for a hearing and appeal procedure to contest the fee. It states that an arrestee may request an informal hearing before the chief of police or his designee in writing within 30 days after the imposition of the fee (Def.'s Mem.: Ex. A, Ord. 11-172). If the police chief or designee determines that imposition of the fee was improper, the fee will not be required, or it will be refunded if already paid (*Id.*). If the police chief or designee determines that the fee was proper, the arrestee may appeal the decision in writing within 14 days

---

[2] *See* http://www.naperville.il.us/emplibrary/FY10AnnualOperatingBudget.pdf, at 100-111. The Patrol and Support Services division of the police department includes arrests and processing of arrest records. *Id.* at 104-06. We may take judicial notice of documents in the public record without converting a motion to dismiss into a motion for summary judgment. *See Pugh v. Tribune Co.*, 521 F.3d 686, 691 (7th Cir. 2008).

[3] *See supra, Pugh*, 521 F.3d at 691 (we may take judicial notice of documents in the public record without converting a motion to dismiss into a motion for summary judgment).

and request a more formal administrative hearing (*Id.*).

*Third*, the 2011 Ordinance explains the purpose of the fee. The prefatory statements explain that booking an arrestee takes an average of "over 3 hours . . . during which the city [] utilizes Police Officer duty time; detention officer's duty time; materials; and space; . . ." (Def.'s Mem., Ex. A, at 1). The 2011 Ordinance states that, as a result, it is "necessary and desirable to shift a portion of the City's costs for processing of arrestees to the arrestees themselves, for the benefit of the health, safety and welfare of the City's citizens" (*Id.*). The 2011 Ordinance further states that the fee "is not calculated as a revenue generating fee and is only enacted to recover a portion of the administrative fees expended in the arrest and processing of arrestees; . . ." (*Id.*).

## II.

We begin with the issue of the justiciability of plaintiff's claims. Naperville contends that plaintiff's claim for declaratory and injunctive relief is moot, because the 2011 Ordinance repealed and replaced the 2009 Ordinance (Def.'s Mem. at 12-14). Mootness is one of the concepts that comprise the threshold issue of justiciability. *Zessar v. Keith*, 536 F.3d 788, 793 (7th Cir. 2008). A dispute over the constitutionality of a statute becomes moot if a new statute is enacted in its place during the pendency of the litigation, and the plaintiff seeks only prospective relief. *Id.* Plaintiff, while taking no position on the constitutionality of the 2011 Ordinance, concedes that his request for injunctive relief is moot as of the effective date of the repeal of the 2009 Ordinance (doc. # 30: Pl.'s Resp. at 11-12 & n.3).

While plaintiff does not discuss whether his claim for declaratory relief is moot, we find that it is. "Article III denies federal courts the power to decide questions that cannot affect the rights of the litigants in the case before them." *See Zessar*, 536 F.3d at 794 (internal quotations omitted).

Thus, we may not opine on the constitutionality of the now-defunct 2009 Ordinance. The enactment of the 2011 Ordinance mooted all prospective relief plaintiff seeks as to the 2009 Ordinance, including declaratory relief. *See Id.* That said, the passage of the 2011 Ordinance does not render moot plaintiff's claim for damages alleged to have resulted from the imposition of the fee under the 2009 Ordinance. Thus, we turn to whether the complaint states a viable constitutional claim for which Mr. Roehl may seek money damages.[4]

### III.

Mr. Roehl alleges that the 2009 Ordinance violated his and other similarly situated plaintiffs' Fourteenth Amendment procedural due process rights for four reasons: (1) "[i]t does not provide him with adequate notice of the seizure and conversion of his property and his attendant rights;" (2) "[i]t does not provide an opportunity to object to the seizure and conversion of his property, and to assert a reason, such as indigent status or exempt source of funds, that may prevent Naperville from taking and converting his money;" (3) "[i]t does not provide any type of hearing prior to the deprivation of the property;" and (4) "there are no procedural safeguards guaranteeing that [plaintiffs'] property will be returned if he is not charged, not prosecuted, or if he is acquitted" (Compl., ¶¶ 33-34).

To state a claim under Section 1983, a plaintiff must allege that he was "deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999).

---

[4]Defendant argues that plaintiff cannot maintain a class action under Federal Rule of Civil Procedure 23(b)(2) based solely on monetary damages (Def.'s Mem. at 13). At this stage, it is premature to address the issue of class certification. We do note that the complaint asserts both Rule 23(b)(2) and (b)(3) as bases for proceeding with this case on a class basis (Compl., ¶ 24).

To determine whether plaintiff's allegations of a procedural due process violation are "plausible," *Iqbal*, 129 S. Ct. at 1949, we must look further into the elements that constitute a procedural due process violation.

In *Mathews v. Eldridge*, the Supreme Court set forth three factors for courts to consider in determining whether a plaintiff has adequately stated a claim for a violation of procedural due process: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Before we reach the *Mathews* test, however, "[t]he first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in 'property' or 'liberty.' Only after finding the deprivation of a protected interest do we look to see if the State's procedures comport with due process." *Sullivan*, 526 U.S. at 59.[5]

## A.

Defendant contends that the $50.00 fee imposed by the 2009 Ordinance is too small to implicate any fundamental rights or protectable property interests of constitutional dimensions (Def.'s Mem. at 5). Defendant argues that we should follow the decision in *Markadonatos v. Village of Woodbridge*, No. 11 C 7006, 2012 WL 74857 (N.D. Ill. Jan. 6, 2012), which addressed an issue

---

[5]Plaintiff's contention that our inquiry into the sufficiency of his complaint need go no further than the general *Sullivan* test is a non-starter (Pl.'s Resp. at 3-4). In *Sullivan*, the Supreme Court looked to the test for procedural due process violations set forth in *Mathews* to determine whether the plaintiff adequately alleged a due process violation. *Sullivan*, 526 U.S. at 59-60.

almost identical to the instant case. In *Markadonatos*, the district court held that the $30.00 administrative fee charged to arrestees in Woodbridge was "a small sum" which, although it may be subjectively significant to some individuals, was not significant in the constitutional analysis (doc. # 31: Def.'s Reply at 3-4 (citing *Markadonatos*, 2012 WL 74857, at *2)).[6] In addition, defendant contends that the $50.00 fee at issue here "smacks of administrative detail" like the fee at issue in *Schilb v. Keubel*, 404 U.S. 357, 365 (1971) (Def.'s Mem. at 5). In *Schilb*, the Supreme Court held that the one percent of bail retained by the clerk of the court after the plaintiff's acquittal did not violate due process because it was an administrative cost imposed upon everyone – guilty or innocent – who sought the benefit of the statute allowing an arrestee to execute a bail bond and deposit with the clerk cash equal to 10 percent of the bail or $25, whichever was greater. *Id.* at 360-61, 370-71.

The cases defendant cites, however, do not hold that the plaintiffs did not have a property interest in the money the government took from them. *See, e.g., Markadonatos*, 2012 WL 74857, at *2 (parties did not dispute that the plaintiff had a property interest in his money). Contrary to defendant's argument, *Markadonatos* did not hold (or suggest) that the plaintiff lacked a property interest in the $30.00 that was charged as a fee. Rather, the court discussed the amount of the fee in the context of the first *Mathews* factor: the private interest that will be affected by the official action. *Markadonatos*, 2012 WL 74857, at *2.

The law is clear that individuals have a property interest in their own money. *See Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 571-72 (1972). Accordingly, plaintiff does have a property interest in the $50.00 fee required by the 2009 Ordinance.

---

[6]After the *Markadonatos* court's opinion granting the defendant's motion to dismiss, the court granted without discussion the plaintiff's motion for reconsideration or in the alternative for leave to file an amended complaint, and granted the plaintiff leave to file an amended complaint (Case No. 11 C 7006, doc. # 33).

**B.**

We now consider the factors set forth in *Mathews* to assess whether plaintiff has stated a plausible procedural due process claim. We do so mindful of the Supreme Court's admonition that due process "is not a technical conception with a fixed content unrelated to time, place and circumstances," but instead is flexible and calls for such procedural protections as the particular situation demands. *Mathews*, 424 U.S. at 334 (internal quotations omitted).

**1.**

The first *Mathews* factor looks to the private interest that will be affected by the official action. Naperville argues that the private interest in the $50.00 fee required by the 2009 Ordinance is so small that no statutory pre-deprivation or post-deprivation procedural due process safeguards are needed. Defendant urges us to adopt the analysis in *Markadonatos*, which held that a $30.00 administrative fee for arrestees was a "a small sum" which was not significant in the constitutional analysis (Def.'s Reply at 3-4 (citing *Markadonatos*, 2012 WL 74857, at *2)). The *Markadonatos* court interpreted *Mathews* as holding that "short of an income stream constituting the sole means of an individual's subsistence," an individual's property interest in money should be entitled to only minimal weight. *Markadonatos*, 2012 WL 74857, at *2.

In *Mathews*, 424 U.S. at 340-41, the Supreme Court compared the individual who was denied disability benefits to a welfare recipient who was denied benefits. The Court reasoned that the welfare recipient was entitled to a pre-deprivation evidentiary hearing because he or she – unlike the disability recipient – had no other means of subsistence. *Id.* By contrast, while the termination of disability benefits could cause significant hardship, the Supreme Court found that there is "less" reason to mandate a pre-deprivation evidentiary hearing in that situation. *Id.* The Court reasoned

8

that eligibility for disability benefits is not based upon financial need, and the disability recipient thus may have other means of subsistence. *Id.* The *Mathews* Court then weighed the plaintiff's private interest in disability benefits with the other procedural due process considerations to "strik[e] the appropriate due process balance." *Id.* at 347. The Supreme Court ultimately found that due process did not require an evidentiary hearing prior to the termination of disability benefits. *Id.*

To be sure, the *Mathews* court made plain that "the degree of potential deprivation that may be created by a particular decision is a factor to be considered in assessing the validity of any administrative decision making process." *Mathews*, 424 U.S. at 341. We do not quarrel with the proposition that imposition of a $50.00 fee is a far more minor deprivation than the deprivation of benefits at issue in *Mathews* where, "given the typically modest resources of the family unit of the physically disabled worker, the hardship imposed upon the erroneously terminated disability recipient may be significant." *Id.* at 342.

But, the arguably small degree of deprivation involved in irretrievably losing $50.00 does not end the analysis. It is one factor to consider in applying the balancing test required by *Mathews*.

**2.**

Next, we consider the government's interest in charging the $50.00 fee, including the function involved and the fiscal and administrative burdens that an additional or substitute procedural requirement would entail. *Mathews*, 424 U.S. at 335. While this is often referred to as the "third *Mathews* factor," we address it before we address the risk of erroneous deprivation because our analysis of the government's interest informs our discussion of the risk of erroneous deprivation.

Naperville argues that its interest in charging the $50.00 fee is strong because it expends significant time and resources in booking arrestees, and it has a legitimate interest in recouping a

portion of these costs (Def.'s Mem. at 9). Further, defendant argues that if it were required "to devote extra time and manpower into providing hearings for arrestees as they are being booked" to determine if the fee was correctly assessed, "[s]uch an impractical system would delay the arrest process and inefficiently use public resources, resulting in costs to the public that are likely to far outweigh the administrative fee collected" (Def.'s Reply at 7-8).

Initially, we note that in Calendar Year 2010, the only full year during which the 2009 Ordinance was in effect, Naperville collected $71,605.00 in "administrative booking fees," compared to the $5,952,921.00 the City of Naperville allocated to the Patrol and Support services of the police department during Fiscal Year 2010 (*see supra* at 2-3). Just as a $50.00 fee may not be a major deprivation to many arrestees, we cannot say as a matter of law that defendant has a strong interest in imposing a fee that plainly recoups only a very small portion of the funding that Naperville allocated for Support and Patrol Services.

Moreover, the governmental interest in imposing a booking fee on all arrestees is not monolithic, and we cannot say as a matter of law that the governmental interest here is strong in all circumstances. In assessing the strength of the government's interest, we must recognize – as plaintiff points out – that all arrestees are not created equal.

On one end of the governmental interest spectrum are the arrestees who are ultimately found guilty of the crime for which they were arrested and charged. As to these persons, the governmental interest in defraying the cost of processing their arrests is at its strongest. The government has an obvious interest in requiring guilty persons to pay a fee that offsets some of the costs the government incurs because of their illegal conduct. One case on which defendant relies fall into this category. In *Sickles v. Campbell County, Kentucky*, 501 F.3d 726, 728 (6th Cir. 2007), the Sixth Circuit held

10

that a municipal jail, consistent with the due process clause of the Fourteenth Amendment, could withhold a portion of an inmate's canteen account funds to cover the costs of booking, room, and board without providing the inmate with a hearing prior to withholding the money. Two of the plaintiffs in *Sickles* were inmates at the jail, and at least one had pleaded guilty to the crimes for which he was charged. The Sixth Circuit found that the plaintiffs' property interests – which ranged from $40 to $110 – were "small in absolute and relative terms," as compared to cases involving more extreme deprivations of property, where courts required a pre-deprivation evidentiary hearing. *Id.* at 730.

On the other end of the spectrum are arrestees for whom the governmental interest in charging a fee for booking and arrest is at its weakest; perhaps, to the point of vanishing. These are arrestees who were arrested on warrants that are invalid because, for example, the warrants had been quashed but not yet removed from the system. This category may include individuals who were wrongly arrested because, for example, they were incorrectly identified as the person sought on otherwise valid warrants. Also falling near this end of the spectrum are arrestees whose charges are ultimately dismissed because there was an absence of probable cause for the arrest. Any governmental body may have difficulty in showing that they have a legitimate interest in imposing a booking fee on a person who should not have been arrested or booked in the first place.

Falling somewhere between these extremes may be the situation presented by Mr. Roehl himself. He was arrested on a charge of driving under the influence, and later was found not guilty of that charge (Compl., ¶¶ 17-18). The complaint does not allege that the police lacked probable cause to arrest Mr. Roehl, and, of course, an acquittal of charges at trial under the reasonable doubt standard does not imply a lack of probable cause for the original arrest. *See People v. Jackson*, 903

N.E.2d 388, 403 (Ill. 2009) ("whether probable cause exists is governed by commonsense considerations, and the calculation concerns the probability of criminal activity, rather than proof beyond a reasonable doubt"). In this circumstance, there still may be a governmental interest in recovering some of the costs of processing a person who was properly arrested and charged, but perhaps not as strong as the interest where the arrestee is later convicted.[7]

The parties do not cite to any cases where a plaintiff was in the same situation as Mr. Roehl. In fact, two of the cases relied on heavily by defendant – *Schilb*, 404 U.S. at 365, and *Payton v. County of Carroll*, 473 F.3d 845, 851 (7th Cir. 2007) – involve fees charged for posting bail bonds, a situation in which the governmental interest is arguably stronger than in the instant case. In *Payton*, the Seventh Circuit held that a statute allowing sheriffs to charge an administrative fee for posting bond did not violate the arrestees' due process rights, because they could avoid the fee by paying a county clerk instead of the sheriff, paying the bond in full, putting down property as collateral, or seeking a reduction in bail. *Payton*, 473 F.3d at 851-52.[8] Thus, the Seventh Circuit agreed with the district court that sheriffs had a legitimate interest in recouping some of the costs of administering the bail system, as it was a voluntary service provided for the benefit of arrestees. *Id.*; *see also Schilb*, 404 U.S. at 366 (provision requiring retention of one percent of cost of bail was "administrative detail" that did not violate procedural due process rights where bail system provided

---

[7] Still another scenario that may fall somewhere in the middle of the spectrum of the government's interest in recouping booking fees is arrestees who have their charges "stricken on leave" to reinstate the prosecution. These charges, while stricken, remain pending as they may be reinstated. *See, e.g.*, *Ferguson v. City of Chicago*, 820 N.E.2d 455, 460 (Ill. 2004).

[8] Defendant interprets the Seventh Circuit's decision in *Payton* as meaning that "small administrative fees do not violate constitutional rights" (Def.'s Reply at 5). In our view, defendant reads too much into *Payton*. While *Payton* involved a constitutional due process challenge to a particular fee structure, the Seventh Circuit's decision there did not rest solely on the amount of the fee, but also considered the other *Mathews* factors: the nature of the fee (an administrative fee charged for posting a bail bond) and the risk of erroneous deprivation of the plaintiff's interest. *Payton*, 473 F.3d at 851-52.

benefits to arrestees). By contrast, the arrest or booking fee in the 2009 Ordinance does not seek to recover costs for a service that an arrestee voluntarily chooses to use. Rather, it is mandatory, and it is imposed without exception on all arrestees.[9]

### 3.

The wide variation in arrestees further informs the final *Mathews* factor we consider: the risk of an erroneous deprivation of the plaintiff's private interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards. *Mathews*, 424 U.S. at 334-35. Defendant argues that there is no risk of erroneous deprivation because there is no risk that the $50.00 fee would be charged to someone who has not been arrested, since it is due from all arrested individuals regardless of the outcome of their case or indigence (Def.'s Mem. at 8-9). Plaintiff contends, by contrast, that it is this lack of discretion in assessing the fee which increases the risk of erroneous deprivation, which plaintiff defines as the risk that the $50.00 fee would be charged to arrestees who were ultimately exonerated (Pl.'s Resp. at 8).

The risk of erroneous deprivation is a more nuanced question than either plaintiff or the government suggests. Defendant is correct that the likelihood of imposing a fee on a non-arrestee is virtually nil, and this was the risk considered in *Markadonatos*, 2012 WL 74857, at *3. On the other hand, as the 2009 Ordinance does not contain any procedural safeguards to permit arrestees to challenge the $50.00 fee, there is a 100 percent chance that someone who should not have been arrested in the first place will be deprived of their $50.00.

---

[9]Defendant also cites to *Slade v. Hampton Roads Reg'l Jail*, 407 F.3d 243 (5th Cir. 2005), for support (Def.'s Mem. at 6-7), but that case does not provide insight into the governmental interest question. In *Slade*, the plaintiffs – pre-trial detainees who were charged a daily one dollar fee to partially defray the costs of their detention – did not assert a procedural due process violation. *Id.* at 252-53. While the Fifth Circuit opined, in *dicta*, that a jail has a legitimate interest "in attempting to defray the costs of a prisoner's keep," this is not the governmental interest at issue in this case. *Id.* at 253.

To help us determine how the aforementioned risks of erroneous deprivation weigh in the *Mathews* balance, we next look at "the probable value, if any, of additional or substitute procedural safeguards." *Mathews*, 424 U.S. at 334-35. Defendant argues that imposing procedural requirements – specifically, pre-deprivation evidentiary hearings – would make the booking and arrest system impractical and inefficient, and would frustrate Naperville's purpose in collecting the fee by increasing the cost of booking (Def.'s Reply at 7-9). In *Mathews*, the Supreme Court held that "the degree of potential deprivation that may be created by a particular decision is a factor to be considered in assessing the validity of any administrative decision making process." *Mathews*, 424 U.S. at 341. The *Mathews* Court found that despite the "significant" hardship that might be "imposed upon the erroneously terminated disability recipient" in that case, a pre-deprivation evidentiary hearing was not required to satisfy due process. *Id.* at 342-43. In our view, this holding likely dooms the idea that such a hearing would be required before imposition of a $50.00 booking fee.

The fact that no pre-deprivation evidentiary hearing may be required, however, does not end our analysis. As demonstrated by the additional procedural safeguards included in the 2011 Ordinance, Naperville deems it feasible to provide some post-deprivation process – including a post-deprivation hearing and appeal – to ensure that the fee is properly imposed. The 2009 Ordinance failed to provide any pre- or post-deprivation process. We cannot say that any claim of fiscal and administrative burden, without more, is sufficient to trump an arrestee's interest in a post-deprivation process.

The presence or absence of these additional safeguards is important to the *Mathews* analysis. In *Mathews*, the plaintiff was able to avail himself of other pre-deprivation procedures to contest the

Social Security Administration's denial of his application for benefits, including contesting the decision in writing. *Mathews*, 424 U.S. at 329. In addition, the *Mathews* plaintiff had access to detailed post-deprivation administrative procedures which would have provided him with full retroactive relief. *Id*. at 339-40. In that case, the Supreme Court found that no additional or substitute procedural safeguards were necessary.

Appellate courts that have considered the value of additional or substitute procedural safeguards under the *Mathews* test have come to similar conclusions. In *Payton*, for example, the Seventh Circuit held that extra procedural safeguards were not necessary to satisfy due process because the bail system contained a number of safeguards for people who could not afford the fee at issue. *Payton*, 473 F.3d at 851-52. Similarly, in finding that no additional procedural due process safeguards were necessary for the pre-trial detainees in *Slade*, the Fifth Circuit considered that pre-trial detainees, like other inmates, have access to grievance procedures within the jail to contest the fees at issue. *Slade*, 407 F.3d at 253-54. Likewise, in *Sickles*, the Sixth Circuit found that extra due process procedural safeguards were not necessary for the plaintiff-detainees, where they had notice of and access to internal grievance and post-deprivation administrative procedures which they did not use and which the plaintiffs did not contend failed to protect their interests. *Sickles*, 501 F.3d at 730-31.

By contrast, the 2009 Ordinance failed to provide *any* procedural mechanism whatsoever – whether pre- or post-deprivation – to address whether the fee was properly imposed. Thus, we cannot hold, as a matter of law, that the 2009 Ordinance satisfies procedural due process. Moreover, the broad spectrum of arrestees who would be subject to the 2009 Ordinance further suggests to the Court that a motion to dismiss is not the best vehicle in which to address Mr. Roehl's claims.

Therefore, we find that plaintiff has pleaded a plausible claim for a deprivation of procedural due process.

## IV.

Defendant makes a final argument in support of its motion to dismiss: that state law tort remedies provided plaintiff with sufficient post-deprivation due process. Defendant contends that plaintiff could challenge the fee in state court with a mandamus action, a breach of contract claim, an unjust enrichment claim, a conversion claim, or an action for false arrest (Def.'s Mem. at 11-12; Def.'s Reply at 8-9). Defendant argues that the existence of these state law remedies renders unnecessary any other process to challenge the imposition of the fee.

A deprivation of a constitutionally protected property interest caused by a state employee's random, unauthorized conduct – whether intentional or negligent – does not give rise to a Section 1983 procedural due process claim, unless the state fails to provide an adequate post-deprivation statutory or common law tort remedy for the erroneous deprivation. *Zinermon v. Burch*, 494 U.S. 113, 128 (1990) (citing *Parratt v. Taylor*, 451 U.S. 527 (1981) (overruled in part not relevant here, by *Daniels v. Williams*, 474 U.S. 327 (1986)); *see also Hudson v. Palmer*, 468 U.S. 517, 535 (1984). "*Parratt* and *Hudson* represent a special case of the general *Mathews v. Eldridge* analysis, in which postdeprivation tort remedies are all the process that is due, simply because they are the only remedies the State could be expected to provide." *Zinermon*, 494 U.S. at 128.

But we are not presented here with a claim that an official in Naperville imposed a fee on any arrestee as some rogue action. Mr. Roehl alleges that an established state procedure – the 2009 Ordinance — caused the alleged deprivation of property. The 2009 Ordinance did not provide him with any administrative pre- or post-deprivation remedies, and it did not provide him with notice of

any available post-deprivation state law tort remedies. In cases alleging a procedural due process violation based on an established governmental procedure, the existence of a post-deprivation claim under state law does not preclude a plaintiff's Section 1983 procedural due process claim. *See Zinermon*, 494 U.S. at 138-39.

Furthermore, even where pre-deprivation safeguards are impractical or futile, courts should consider whether post-deprivation remedies are "not only [] feasible but will give the deprived individual a completely adequate remedy." *Ellis v. Sheahan*, 412 F.3d 754, 758 (7th Cir. 2005). In the instant case, it is far from evident that a state law tort claim would remedy the deprivation of which plaintiff complains. The 2009 Ordinance did not provide any means to challenge the validity of the $50.00 booking fee, nor did it provide any bases upon which an arrestee could challenge it in state court. As "the sliding-scale approach of *Mathews*, [] requires comparison of the costs and benefits of alternative remedial mechanisms," *Ellis*, 412 F.3d at 758, resolution of plaintiff's claim is not appropriate at this time, where the available remedial mechanisms are in question. Defendant's motion to dismiss is therefore denied.

## V.

Finally, we also address here the related issue of the alternative relief sought by plaintiff in his surreply, which he filed with leave of Court (*see* doc. # 34). In the surreply, plaintiff requests leave to file an amended complaint "[i]f the Court believes that the Complaint failed to assert that no post-deprivation hearing was required, or that the Naperville booking fee ordinance is unconstitutional" (doc. # 36: Pl.'s Surreply at 5). As we have denied defendant's motion to dismiss, plaintiff's request for leave to amend is moot.

In his surreply, plaintiff also argues that the 2009 Ordinance is "substantively

17

unconstitutional," and he contends that this claim is included in the complaint (Pl.'s Surreply at 2). We disagree. The complaint states only a claim for violation of procedural due process. The complaint does not identify what substantive constitutional claim plaintiff purports to assert. Indeed, the paragraph of the complaint on which plaintiff relies for this alleged "substantively unconstitutional" claim avers a lack of "procedural safeguards" (*Id.* at 3 (citing Compl., ¶ 34)). We are hard pressed to see how a complaint allegation of a lack of "procedural safeguards" alleges a substantive constitutional claim.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss plaintiff's complaint (doc. # 26) is granted in part, and denied in part: the motion is granted insofar as we dismiss plaintiff's claim for declaratory and injunctive relief, but we deny the motion as to plaintiff's claim for damages. In addition, we deny as moot plaintiff's request for leave to file an amended complaint (doc. # 36).

**ENTER:**

**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

**Dated: March 9, 2012**

18